UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CESAR HERRERA SANCHEZ,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF BONNEVILLE; DEPUTY CHARLES BOOMGAARDEN; DEPUTY TYREL PARMER; and DEPUTY JOHN TROTTER,<br><br>Defendants. | Case No. 1:17-cv-00166-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. OVERVIEW

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 27. Having reviewed the record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court decides the Motion on the record without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to GRANT the Motion for Summary Judgment.

## II. FACTS[1]

Plaintiff Cesar Herrera Sanchez is an inmate at the Idaho State Correctional Center. Dkt 27-3, at 7. When the events that give rise to this case occurred, Sanchez was a pre-trial detainee at the Bonneville County Jail, awaiting trial on charges for drug trafficking and possession of paraphernalia. When officers booked Sanchez into the Bonneville County Jail, on August 12, 2015, they asked him if he had any enemies in the Jail. Dkt. 27-4, at 1. Sanchez stated that he did not have any enemies and he did not know anyone in the Bonneville County Jail. *Id.* Thereafter, Officers placed Sanchez in "Unit 2" at the Jail, which contained 40 or 50 other detainees. *Id.*

On September 8, 2015, three individuals who were also staying in Unit 2, Jorge Espinoza, Juan Villa, and Roberto Vargas, attacked Sanchez in his cell. *Id.* at 2. Sanchez had not had any problems with these three individuals, or any other Bonneville County Jail inmates, up until that time. *Id.* Sanchez was familiar with the three assailants and would pray with Espinoza and Jan Villa every night before bed as "they were the only [other detainees at the Jail] that spoke Spanish." *Id.* at 4. These three individuals hit Sanchez until he "was drenched in blood." *Id.* at 3. They told Sanchez they were attacking him "because [he] was working with the police." *Id.* When Idaho State Police officers originally arrested Sanchez, he told them he was working with federal marshals in Montana. Dkt. 27-3, at 8. Sanchez believes someone told his three attackers this information.

---

[1] The following facts are construed in the light most favorable to Sanchez, the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

No officers or staff members working at the Bonneville County Jail saw the attack or arrived while the attack was ongoing. Dkt. 27-4, at 3. After the individuals left, Sanchez "rang the bell at the door," which is supposed to alert Jail staff to emergencies. *Id.* The first two times Sanchez rang the bell no one answered. *Id.* The third time officers responded. *Id.*

Upon discovering Sanchez, officers took him to shower, gave him new clothes, and then took him to see a doctor, where he received prompt medical care. *Id.* The attackers broke Sanchez's left index finger, knocked loose two of his front teeth, and split open his lip such that it required nine stitches. *Id.*; Dkt. 23, at 4. Sanchez also suffered from temporary hearing loss. Dkt. 23, at 4.

Thereafter, deputies moved Sanchez to "isolation," away from the general population for three to four months. Dkt. 27-4, at 5. Deputies then moved him to Unit 4, a "protective custody" unit for the remainder of his time at the Bonneville County Jail. *Id.* at 6. Sanchez had no other problems with inmates during the remainder of his time at the Bonneville County Jail. The Bonneville County Jail investigated the attack, and the attackers were ultimately charged with battery. *Id.* at 3, 6.

On April 17, 2017, Sanchez filed this suit and an application to proceed in forma pauperis. Sanchez asserted claims for failure to protect under 42 U.S.C. § 1983 against three deputies at the Bonneville County Jail—Deputy Charles Boomgarden, Deputy Tyrel Parmer, and Deputy John Trotter ("the deputy Defendants"). He also asserts a § 1983 claim against the Bonneville County Jail. Magistrate Judge Candy Dale reviewed Sanchez's Complaint, First Amended Complaint, and Second Amended Complaint

pursuant to 28 U.S.C. §§ 1915 and 1915A to determine if Sanchez had asserted facts necessary to support claims upon which relief could be granted. Dkts. 8, 11, 21. Judge Dale ultimately concluded that Sanchez could proceed on his claims. Defendants now move for summary judgment on all of Sanchez's claims. In addition to the § 1983 claims, Defendants also move to dismiss a state law negligence claim that Judge Dale never addressed. The Court will address each claim in turn.

### III. LEGAL STANDARD

The pending Motion is a motion for summary judgment. However, Defendants have also argued that Sanchez's Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted. The Court will, therefore, set forth both standards.

#### A. *Summary Judgment Standard*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, this Court must "view[] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). Accordingly, this Court must enter summary judgment if a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). As Sanchez is an inmate proceeding pro se, the Court must "construe liberally [his] motion papers and pleadings" and "avoid applying summary judgment rules strictly." *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121. A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to

"state a claim to relief that is plausible on its face." *Id.* at 570. In considering a Rule 12(b)(6) motion, the Court must view the "complaint in the light most favorable to" the claimant and "accept[] all well-pleaded factual allegations as true, as well as any reasonable inference drawn from them." *Johnson*, 534 F.3d at 1122.

Again, the Court must construe Sanchez's complaint "liberally," as he is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks and citation omitted).

## IV. ANALYSIS

### A. Failure to Protect

Sanchez first asserts claims under 42 U.S.C. § 1983, the civil rights statute. To succeed on a claim under § 1983, a plaintiff must establish a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

The Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, applies to pretrial detainees like Sanchez. *Bell v. Wolfish*, 441 U.S. 520, 537 n. 16 (1979). However, because pretrial detainees' rights under the Fourteenth Amendment are comparable to a prisoner's rights under the Eighth Amendment, the same standards apply. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (citing *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1243–44 (9th Cir. 2010)).

The Eighth Amendment to the United States Constitution protects prisoners against cruel and unusual punishment. To succeed on a claim under the Eighth Amendment, a Plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm," or that he has been deprived of "the minimal civilized measure of life's necessities" as a result of Defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). The Ninth Circuit has clarified that "the elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). To succeed on his claim, Sanchez must show that the deputies knew of, and disregarded, an excessive risk to his safety. *Id.*

Sanchez argues the deputy Defendants failed to protect him in two ways. First, in failing to prevent the attack in the first place, and second, in failing to monitor the video surveillance footage and emergency call button and failing to respond quickly when the attack happened and when he called for help.

Defendants first argue that Sanchez has failed to state a claim upon which relief can be granted. As to Sanchez's first theory, the Court agrees. By Sanchez's own admission, he told staff members at the Bonneville County Jail that he did not have any enemies and did not know anyone at the Jail. Sanchez makes no other allegation, and presents no other evidence, that support a finding that Defendants knew Sanchez was at substantial risk of attack and then disregarded that risk.

Sanchez's second theory, that Defendants failed to adequately monitor the video camera footage and emergency call button, also fails. Construing Sanchez's Second Amended Complaint liberally, Sanchez asserts that deputies Charles Boomgaarden, Tyrel Parmer, and John Trotter were on duty and overseeing Unit 2 when the attack occurred. Sanchez does not directly allege or provide evidence that these deputies were responsible for monitoring the video surveillance of Unit 2 or the emergency call button for Unit 2. Even assuming the deputies were in charge of these tasks during the relevant timeframe, Sanchez has still failed to plead a failure to protect claim. First, Sanchez does not allege that the deputies *intentionally* declined to monitor Unit 2 or *intentionally* declined to

respond to his calls for help. *Id.* Second, Sanchez does not allege that the intentional failure to monitor put him "at substantial risk of suffering serious harm." *Id.* Again, the Jail staff had no knowledge that Sanchez was at risk of being attacked. Therefore, the deputies had no reason to closely monitor the video surveillance and emergency call button in case Sanchez was attacked. Finally, Sanchez makes no allegation or showing that the failure to monitor caused his injuries. *Id.* Rather, it seems clear that the other inmates caused his injuries. Moreover, although Jail staff did not respond to the first and second emergency calls, as soon as they discovered Sanchez, they promptly cleaned him up and provided him with medical care. Sanchez does not allege how long the response delay was or that any delay exacerbated his injuries.

For all of these reasons, Sanchez has failed to meet the Rule 8 pleading requirements with regard to his failure to protect claim. Defendants have asserted several additional reasons why the Court should dismiss this claim, including that the deputy Defendants are entitled to qualified immunity. The Court declines to address these additional arguments at this time.

### *B. Monell Claim*

To state a claim against a government entity under § 1983 (also called a *Monell* claim), a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Plumeau v. Sch. Dist. No. 40 Cty. of*

*Yamhill,* 130 F.3d 432, 438 (9th Cir. 1997)). As set forth in the previous section, Sanchez has failed to allege that the individual Defendants violated his Fourteenth Amendment rights by failing to protect him. Sanchez has thus failed to allege the first element of his *Monell* claim. *Id.* In addition, even assuming Sanchez adequately pled the first element, Sanchez has not pled that the deputy Defendants violated his constitutional rights pursuant to an existing policy, practice, or custom of the Bonneville County Jail or that an official with "final policymaking authority" ratified the deputies' conduct. *See Curtis v. City of Gooding*, 844 F. Supp. 2d 1101, 1109 (D. Idaho 2012) ("Alternatively, a plaintiff may show that the 'decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision' or that 'an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'"). The Court, therefore, must dismiss the *Monell* claim.

### *C. Negligence Claim*

Finally, the Court briefly addresses Sanchez's negligence claim. As stated previously, Judge Dale reviewed Sanchez's complaints and did not address whether Sanchez could proceed on a negligence claim under Idaho law. Rather, Judge Dale found that Sanchez's "conclusory assertions, statements of his own belief, and accusations of negligence simply do not support a plausible claim for relief under § 1983." Dkt. 8, at 6 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due

process.")). Thus, it appears that it was not even clear to Judge Dale that Sanchez was pursuing a negligence claim.

Nevertheless, Defendants now assert that the Court must dismiss Sanchez's negligence claim for two reasons. First, because Sanchez has failed to state a negligence claim and, second, because he failed to post a bond or give the proper notice as required under Idaho law. The Court addresses this second argument first. It is true that "[s]ection 6–610(2) of the Idaho Code requires a plaintiff to post bond before it initiates suit against a law enforcement officer" *Timothy v. Oneida Cty.*, No. 4:14-CV-00362-BLW, 2014 WL 4384348, at *1 (D. Idaho Sept. 3, 2014), "if the 'action arises out of, or in the course of, the performance of his duty,'" *Chaffin v. Shoshone Cty.*, No. 03-445-N-MHW, 2005 WL 3307214, at *2 (D. Idaho Dec. 5, 2005) (quoting Idaho Code § 6-610). The bond requirement only applies to state law claims and does not apply to federal law claims. *Timothy*, 2014 WL 4384348, at *1. "The failure to post a bond may be raised by a defendant and objected to 'at any time during the course of a civil action against a law enforcement officer.'" *Chaffin*, 2005 WL 3307214, at *2 (quoting Idaho Code § 6–610(4)). If the plaintiff fails to post the required bond, the court must dismiss the case. *Id.* Defendants, however, fail to acknowledge that "an indigent prisoner's state-law claims will not be barred for failure to post the requisite bond." *Kangas v. Wright*, No. 1:15-CV-00577-CWD, 2016 WL 6573943, at *6 (D. Idaho Nov. 4, 2016). There is no dispute that Sanchez did not post a bond before filing suit against the deputy Defendants in this case. However, Sanchez is an indigent prisoner. Therefore, the Court will not dismiss the negligence claim for failure to post the required bond.

Next, Defendants argue Sanchez has failed to plead facts to state a negligence claim. The elements of a negligence claim under Idaho law are "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Obendorf v. Terra Hug Spray Co., Inc.*, 188 P.3d 834, 840 (Idaho 2008). Sanchez has asserted that the deputy Defendants had a "duty to take reasonable precautions under the circumstances to preserve [his] life, health and safety." Dkt. 23, at 3. Liberally construing Sanchez's Second Amended Complaint, the negligence claim reads similar to the failure to protect claim. Sanchez asserts the deputies were negligent in two ways: failing to predict and prevent the attack and failing to monitor the video surveillance footage and emergency call button. As with the failure to protect claim, Sanchez's first theory of negligence easily fails. Sanchez has not alleged or shown how the deputy Defendants breached their duty of care by failing to predict and prevent the attack. By Sanchez's own admission, he did not know anyone in the Jail prior to arriving and did not have any enemies. Sanchez has set forth no other facts that would have given the deputy Defendants advance notice that other inmates were likely to attack him.

Sanchez's second theory is a little stronger, but still fails. Sanchez asserts the deputy Defendants were on duty when the attack occurred and were supposed to be monitoring Unit 2. However, Sanchez does not allege or show that the deputy Defendants were specifically in charge of monitoring the video surveillance footage and emergency call button during the relevant time. Even assuming the deputy Defendants did have these

MEMORANDUM DECISION AND ORDER – 12

responsibilities, Sanchez's claim still fails as he has not alleged the causal connection between the failure to monitor and his injuries. Again, Sanchez's injuries were plainly caused by the other inmates who attacked Sanchez. Sanchez has made no effort to show the deputy Defendants' alleged failure to monitor was the proximate cause of any injury he suffered. *Cramer v. Slater*, 204 P.3d 508, 515 (Idaho 2009) ("Proximate cause consists of actual cause and true proximate cause, which is also referred to as legal cause."). This link is vital to his claim and without it the Court must dismiss this cause of action.

Finally, as the time to amend the pleadings and complete discovery has passed, the Court will not grant Sanchez leave to allege or prove additional facts in support of this or any other claim.

## V. ORDER

In accordance with the analysis set forth above, the Court HEREBY ORDERS:

1. Defendants' Motion for Summary Judgment (Dkt. 27) is GRANTED.
2. The Court will enter judgment separately in accordance with Fed. R. Civ. P. 58.

DATED: August 7, 2018

David C. Nye
U.S. District Court Judge